The document below is hereby signed.

Signed: September 29, 2017



*S. Martin Teel, Jr.*
*S. Martin Teel, Jr.*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| NETtel CORPORATION, and | ) | Case No. 00-01771 |
| NETtel COMMUNICATIONS, INC., | ) | (Chapter 7) |
| | ) | |
| Debtors. | ) | (Joint Administration) |

MEMORANDUM DECISION AND ORDER
RE THE PRO RATA DISTRIBUTION OF THE DEBTOR'S ESTATE

On August 18, 2016, Wendell W. Webster, the chapter 7

trustee ("Trustee"), filed *Trustee's Final Report* (Dkt. No. 1290)

that proposed a final distribution of the remaining $340,550.89

left in the bankruptcy estate toward payment of administrative

claims.  On September 20, 2016, the court issued an *Order to Show

Cause why Court Ought not Require Filing of an Amended Final

Report Proposing Distribution of Remaining Funds to Only the U.S.

Trustee and Hartford Fire Insurance Company* (Dkt. No. 1292)

wherein the court expressed concern that, under the proposed

final distribution, certain administrative claims were not

receiving a pro rata distribution as required by section 726(b)

of the Bankruptcy Code (11 U.S.C.).  Under § 726(b), similarly

situated administrative claims are paid pro rata when the estate

is insolvent.  However, under the trustee's proposal, the trustee would end up having received payment in the case of 99.49% of his claim and the trustee's law firm would end up having received 98.94% of its claim, but The Hartford Fire and Insurance Company ("The Hartford") and the U.S. Trustee would only have been paid 62.042% of their claims, and Arthur Lander, the accountant hired by the trustee, would have been paid only 62.29% of his claim. The court ordered the parties to brief the court on why an amended final report should not be filed distributing the full remaining $340,550.89 in the estate toward paying the U.S. Trustee and The Hartford's claims.[1]  The court did not require briefing on disgorgement, but allowed the parties to brief the court on disgorgement if they so chose.

The parties briefed the court and the following contentions were brought forward.  The Trustee contends that amounts the Trustee had recovered pursuant to a surcharge under 11 U.S.C. § 506(c) were payable to only the administrative claims that provided the benefit to the secured creditor's collateral that

---

[1]  The court's order did not mention distributing any part of the $340,550.89 to Lander.  The *Trustee's Final Report* represented that Lander had been paid $37,051.83 of a $37,179.73 claim, and proposed paying Lander the unpaid $127.90 balance of that claim.  Accordingly, the court believed that any further distribution to Lander would be inconsistent with § 726(b). However, after issuance of the order the court learned that Lander actually had a claim of $59,685.  Lander had initially been paid his full claim of $59,685, but upon the insistence of the Trustee, Lander returned $22,633.17, leaving an unpaid balance of $37,051.83.

2

justified the surcharge. The U.S. Trustee and The Hartford contend that § 506(c) is a recovery provision for the benefit of the estate. Moreover, the U.S. Trustee and The Hartford ask this court to order a partial disgorgement of the payments received by Trustee and his law firm to ensure pro rata distribution in line with § 726(b). The Trustee requests this court to overturn its decision in *Guinee v. Toombs (In re Kearing)*, 1 B.R. 7 (Bankr. D.D.C. 1994), wherein the court found that it is within the court's discretion to require a disgorgement of fees to ensure pro rata distribution of estate funds under § 726(b). If the court upholds *Kearing*, the Trustee requests the court to find that disgorgement is inappropriate here under the *Order Approving the Compromise of Controversy by and Among Trustee, Agent, and Hartford* (Dkt. No. 1158) ("*Order Approving Compromise*"), approving a compromise the Trustee worked out with the estate's secured creditors and The Hartford, and that disgorgement would be inequitable.

The court concludes that 11 U.S.C. § 506(c) is a recovery provision for the benefit of the estate, not any particular claimant; the court will uphold *Kearing*; and the court finds that disgorgement is appropriate here.

I

Facts

The debtors filed for bankruptcy under chapter 11 on

3

September 28, 2000.  At the time of filing, the debtors owed
their secured lenders more than $92 million.  The case was
converted to chapter 7 within a month of being filed and Wendell
W. Webster became the chapter 7 trustee.  The Trustee hired his
law firm, Webster & Fredrickson, PLLC (Webster, Fredrickson,
Correia & Puth at that time) under 11 U.S.C. § 327.  The Trustee
was granted authority by the court to continue to operate the
debtors' business under a business plan to maximize and retain
its value.  The Trustee recovered a total of $34,275,932.41,
which was not enough to cover all of the administrative claims in
the case, meaning that the estate was insolvent.

The Trustee paid administrative claims under the business
plan and postpetition services according to the court order
authorizing the temporary operation of the business.  The secured
creditors objected to the payment out of their cash collateral of
administrative claims outside of those contemplated by the
business plan, and the Trustee set aside an escrow of sales
proceeds for timely filed claims that could lead to a surcharge
under 11 U.S.C. § 506(c).  The Trustee also entered into a *Joint
Motion* with the secured creditors seeking approval of an
agreement whereby the secured creditors released claims against
the Trustee and allowed for certain administrative claims to be
paid from a surcharge of the secured creditors' collateral under
§ 506(c).

4

The Hartford initiated an adversary proceeding against the Trustee alleging that it held administrative claims of $863,169.92 incurred in the chapter 7 case and $177,885.70 incurred in the chapter 11 case for payments on a lease held by the debtors on real property that the debtors never actually used.  The Hartford additionally objected to the Trustee's *Joint Motion* with secured creditors and demanded payment of its administrative claims under § 506(c).  In resolution of that objection, the Trustee, the secured creditors, and The Hartford entered into a *Stipulation* (Dkt. No. 1157) whereby the Trustee agreed to pay The Hartford $250,000 toward its administrative claims, subject to pro rata distribution at the end of the case, and The Hartford agreed to withdraw its adversary proceeding against the Trustee and its objection to the *Joint Motion*.

The *Order Approving Compromise* granted the *Joint Motion*, and approved the *Stipulation*.  Pursuant thereto, the Trustee paid numerous administrative claims.

The Trustee and his law firm obtained interim payments in accordance with 11 U.S.C. § 331 throughout the case toward their administrative claims.  In the aggregate, the Trustee obtained $1,042,754.63, and his law firm received $2,533,529.03.

On August 8, 2017, the Trustee filed *Trustee's Final Report (TFR)* (Dkt. No. 1290) informing the court that the Trustee held a remaining $340,550.89 to pay all remaining claims and proposed to

5

pay remaining administrative claims as follows:

| Claimant | Allowed Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|
| Trustee - Wendell Webster[2] | $1,083,922.41 | $1,069,252.19 | $9,101.69 |
| Attorney for Trustee | $2,627,516.60 | $2,554,205.36 | $73,311.24 |
| U.S. Trustee | $500 | $0 | $310.21 |
| Hartford | $863,169.62 | $250,000 | $285,527.36 |
| Arthur Lander | $37,179.73 | $37,051.83 | $127.90 |

On September 20, 2016, the court issued an order requiring the parties to show cause why the court ought not require the Trustee to file an amended final report that would require a distribution of the remaining $340,550.89 to pay the U.S. Trustee's and The Hartford's claims. The court pointed out that under the Trustee's proposal, the Trustee would receive 99.94% of his claim, his law firm would receive 98.94% of its claim, Arthur Lander would receive 100% of his claim, whereas the U.S. Trustee and The Hartford would only receive 62.042% of their claims.

The parties have briefed the court in multiple filings and hearings. Through his briefing, the Trustee has made clear that Lander had an allowed claim of $59,685 which was initially paid

---

[2]   The trustee's $1,083,922.41 of claims consist of a $1,048,894.61 commission (for which he received an interim payment of $1,042,754.63 - 99.41% of the claim), estimated costs for retrieval of files and shredding of $6,530.24, an estimated storage cost of $2,000.00, and trustee expenses (already paid in full) of $26,497.56.

in full.   Through an agreement with the Trustee, Lander returned

$22,633.17.   Therefore, if paid under the Trustee's current

proposal, Lander would receive 62.29% of his claim.

II

Section 506(c)

This case rises and falls upon who benefits from the

§ 506(c) surcharge.   Section 506(c) states:

> The trustee may recover from the property securing an
> allowed secured claim the reasonable, necessary costs and
> expenses of preserving, or disposing of, such property to
> the extent of any benefit to the holder of such claim,
> including the payment of all ad valorem property taxes
> with respect to the property.

The question before the court is whether § 506(c) is a

distribution or a recovery provision.   The significance of this

difference cannot be understated.   If distributions of amounts

recovered under § 506(c) do not fall under the priority scheme of

the Bankruptcy Code, then the distribution of these funds is not

governed by § 726(b), and the U.S. Trustee and The Hartford are

only entitled to receive a pro rata distribution of funds in

relation to the administrative claims of the Trustee and his law

firm that were not satisfied by the § 506(c) surcharge.   On the

other hand, if § 506(c) is a recovery provision, then the

distribution under the *Trustee's Final Report* is contrary to

§ 726(b).   There is a split of authority on this issue.

The Trustee argues that a § 506(c) surcharge against a

secured creditor's collateral should go directly to the claimants

7

who provide the benefit to the secured creditor. This interpretation is supported by the decision in *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Coporation, Inc. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061 (9th Cir. 2001). There, the court faced the question whether the § 506(c) surcharge could be paid to a claimant ahead of another claimant with a higher priority under 11 U.S.C. § 507(a). *Id.* at 1064. The court held:

> [A] § 506(c) surcharge is not an administrative claim, but an assessment against a secured party's collateral. *In re Mall at One Assoc., L.P.*, 187 B.R. 476, 480 (E.D. Penn. 1995). As such, it does not come out of the debtors' estate, but rather comes directly from the secured party's recovery. Consequently, § 506(c) expenses do not fall within the priority scheme of the Bankruptcy Code at all.

*Id.* at 1067.

The U.S. Trustee and The Hartford contend that § 506(c) is a recovery provision and cite *In re Swan*, 149 B.R. 137, 143 (Bankr. D.S.D. 1993) ("Obviously, this provision is best described as a recovery provision. Section 506(c) costs and expenses are recovered for the benefit of the bankruptcy estate, they are not recovered as compensation for the trustee."). The U.S. Trustee and The Hartford also rely on *Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.)*, 26 F.3d 481, 484 (4th Cir. 1994), in which the court held:

> When a trustee recovers postpetition costs and expenses from a secured creditor pursuant to § 506(c), the recovered funds become available as an unencumbered asset

8

> for distribution to the unsecured creditors.  See 11
> U.S.C.A. §§ 541(a)(7), 726(a) (West 1993).  Pursuant to
> the distribution rules of § 726(a), the unencumbered
> assets of an estate are distributed to each class of
> unsecured creditors in accordance with the priority rules
> of 11 U.S.C.A. § 507 (West 1993).  11 U.S.C.A. § 726(a).
> If, as often will be the case, the assets remaining in
> the estate are insufficient to satisfy all of the claims
> of a particular class, the funds are divided among the
> claimants in that class on a pro rata basis. See 11
> U.S.C.A. § 726(b).

The U.S. Trustee and The Hartford contend that for purposes of
§ 727(b), the funds the Trustee and his law firm collected must
be treated as interim payments toward satisfaction of their
administrative claims in the case, and that the Trustee and his
law firm have received a windfall at the expense of the U.S.
Trustee and The Hartford as similarly situated administrative
claimants.  They further contend that § 726(b) requires a partial
disgorgement to ensure a distribution on a pro rata basis.

The court agrees with the U.S. Trustee and The Hartford that
§ 506(c) is a recovery provision created for the benefit of the
estate, not any specific claimant.  This interpretation falls
more in line with the purpose of § 506(c) which "is to prevent a
windfall to a secured creditor at the expense of the estate." *In
re JKJ Chevrolet, Inc.*, 26 F.3d at 484.

Section 506(c) provides that only the trustee may collect a
§ 506(c) reimbursement.  *Hartford Underwriters Ins. Co. v. Union
Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).  In *Hartford
Underwriters,* the Supreme Court specifically refused to answer

9

the current question.  530 U.S. at 11 n.4.  However, the Supreme
Court reasoned that the trustee's "unique role in bankruptcy
proceedings" provided further light as to why Congress would give
only the trustee the power to seek a § 506(c) recovery.  *Id.* at
7.  The trustee's unique role is that as a fiduciary to the
bankruptcy estate as a whole.  The trustee has the responsibility
to ensure that every creditor is fairly dealt with and to
maximize each creditor's recovery on its claim by collecting the
full bankruptcy estate.  *JkJ Chevrolet* explained "[l]imiting
§ 506(c) standing to trustees in the context of Chapter 7
proceedings is also consistent with a fundamental purpose of the
Bankruptcy Code—equitable distribution to similarly situated
creditors."  26 F.3d at 484.

If the court ruled otherwise, it would be creating a special
priority scheme.  The court in *JKJ Chevrolet* held that in a
situation similar to the one here, "an administrative claimant
recovering directly from a secured creditor might receive full
reimbursement while other administrative claimants, whose
services were also necessary to the preservation of the estate,
would receive nothing."  26 F.3d at 484.  If the court followed
the Trustee's position of permitting him and his law firm to
partially recover directly from the secured creditors collateral,
there would be disparate treatment of administrative claimants
entitled to the same level of priority.  The court in *JkJ*

10

*Chevrolet* concluded that "if Congress had intended to alter so fundamentally the structure and principles underlying bankruptcy proceedings, it would have done so expressly." *Id.* This court agrees.

*JKJ Chevrolet* also held that a trustee's failure to pursue recovery under § 506(c) may constitute a breach of his fiduciary duty to the estate. 26 F.3d at 485. In some instances, a trustee may be required to collect the 506(c) surcharge to maximize the distribution of the estate. It would be a breach of the trustee's fiduciary duties if he did not pursue a surcharge under § 506(c) and the amount collectable under § 506(c) was significant and would lead to greater payment of claims against the estate. There would be no breach of fiduciary duties if the § 506(c) surcharge were only for the benefit of individual claimants and not the estate as a whole.

The Fourth Circuit further recognized that a trustee is an administrative claimant, and, as such, has an incentive to pursue § 506(c) claims, especially in cases where the estate is insolvent, to ensure he is paid. *Id.* If the court found that the § 506(c) recovery was a surcharge applying directly to the claimant, this incentive would be removed. The trustee would, of course, always be motivated to pursue his own claims, but there would be no carrot, or stick, to compel the trustee to pursue claims of other administrative claimants.

11

The court in *Harris v. Steinberg (In re Resource Tech.
Corp.)*, further explained that to allow the trustee to pursue
claims on behalf of third parties was in contravention of the
Bankruptcy Code.  356 B.R. 435, 445 (Bankr. N.D. Ill. 2006).  The
Bankruptcy Code explains that the role of the trustee is "to
'collect and reduce to money the property of the estate.'" *Id.*
The Bankruptcy Code does not provide the debtor with any "power
to pursue claims on behalf of individual creditors against third
parties." *Id.*  The court thus concluded "by specifying that only
the trustee may surcharge a secured creditor's collateral for the
costs and expenses of preserving or disposing of it. [sic] "[t]he
plain language of § 506(c) compels the conclusion that 'a section
506(c) recovery is for the benefit of the estate.'" *Id.* (quoting
*In re Ben Franklin Retail Store, Inc.*, 210 B.R. 315, 317 (Bankr.
N.D. Ill. 1997).

The position of § 506(c) in the Code further supports
reading it as a recovery provision.  Section 506(c) is placed in
the section of the Bankruptcy Code that defines a secured claim.
Specifically, § 506(c) reduces the amount of an allowed secured
claim by "the reasonable, necessary costs and expenses of
preserving, or disposing of, such property to the extent of any
benefit to the holder of such claim."  Similar to the way that
§ 506(a) bifurcates a secured creditor's claim into secured and
unsecured claims based on the value of the creditor's interest in

its collateral, so too § 506(c) bifurcates a secured creditor's claim to the extent of the administrative costs and expenses of preserving and disposing of the claim.  Such expenses are returned to the bankruptcy estate to satisfy all unsecured claims. *JKJ Chevrolet*, 26 F.3d at 484 ("When the trustee recovers postpetition cost and expenses from a secured creditor pursuant to § 506(c), the recovered funds become available as an unencumbered asset for distribution to the unsecured creditors").

The court in *Harris v. Steinberg (In re Resources Technology)*, also found a conflict of interest should the trustee and his counsel be allowed to recover directly § 506(c) claims from secured creditors, especially in a case where the estate is insolvent.  356 B.R. 435, 446 (Bankr. N.D. Ill. 2006).  The court noted that in such a situation, the trustee and counsel would have an incentive to settle claims the estate and other creditors may have with a secured creditor in exchange for a cash payment on the trustee and his counsel's § 506(c) expenses. *Id.*  The court recognized that the Bankruptcy Code "takes great care to assure that trustees and their counsel do not hold interests adverse to the estate. . . . But a reading of § 506(c) that gives the trustee and the trustee's professionals a personal recovery substantially undermines that policy." *Id.* at 446-447.

The court holds that § 506(c) is a recovery provision that is held in the estate and distributed according to preference

13

rules as required by § 726(b).

III

Disgorgement

A.   This Court's Precedent

In *Kearing*, this court held that disgorgement of interim
fees to enforce pro rata distribution under § 726(b) is within
the discretion of the court.  170 B.R. at 7.  The trustee asks
this court to revisit that decision and find that disgorgement is
not allowed as a remedy under § 726(b).  The trustee relies on
the case *In re Santa Fe Medical Group, LLC*, 557 B.R. 223 (Bankr.
D.N.M. 2016), as support for the position that disgorgement is
not allowed under § 726(b).  The court is not persuaded that
disgorgement is not an allowable remedy to enforce § 726(b), and
will uphold *Kearing*.

*Santa Fe Medical Group* contends that § 726(b) does not
provide for disgorgement as a remedy.  It is true that § 726(b)
is silent as to any remedy if pro rata disbursal of funds becomes
impossible because interim payments exceed a professional
creditor's pro rata share.  This court held in *Kearing* that such
authority exists under 11 U.S.C. § 105(a) which provides that
"[t]he court may issue any order, process, or judgment that is
necessary or appropriate to carry out the provisions of this
title."  Section 726(b) mandates that funds will be distributed
on a pro rata basis, and just because § 726(b) is silent as to

14

any remedy does not mean that Congress did not intend for a
remedy.  If there were no remedy to enforce § 726(b), then the
provision would be little more than a dead letter.  Trustees and
professionals would be allowed to circumvent the Bankruptcy Code
by seeking all administrative expenses through interim orders, to
ensure payment while other claimants would be required to wait
until the end after all funds have been depleted.

    *Santa Fe Medical Group* contends that § 105(a) does not allow
for disgorgement.  557 B.R. at 230.  *Santa Fe Medical Group*
relies on the Supreme Court's holding in *Law v. Siegel*, 134 S.
Ct. 1188, 1194 (2014) where the Court held that § 105(a) "does
not authorize the bankruptcy courts to create substantive rights
that are otherwise unavailable under applicable law, or
constitute a roving commission to do equity."  In *Law*, the Court
faced the question whether the trustee could surcharge the
debtor's homestead exemption to cover expenses the trustee
incurred in challenging the debtor's fraudulent
misrepresentations.  134 S. Ct. at 1193.  The Court held that the
Bankruptcy Code specifically prohibited surcharging the debtor's
exemptions, and the bankruptcy court had exceeded its authority
under § 105(a) in allowing the trustee to surcharge the debtor's
homestead exemption.  The Court wrote "[i]t is hornbook law that
§ 105(a) 'does not allow the bankruptcy court to *override
explicit mandates* of other sections of the Bankruptcy Code."  *Id.*

15

at 1194 (quoting 2 Collier on Bankruptcy ¶ 105.01[2], p. 105-6
(16th ed. 2013))(emphasis added).  The case makes very clear that
where the Bankruptcy Code specifically prohibits a remedy, the
bankruptcy courts do not have authority under § 105(a) to use
such remedy.  Congress surely intended that the distribution of
administrative fees under § 726(b) would be pro rata, especially
where the estate is insolvent.  Disgorgement is not explicitly
prohibited, therefore, § 105(a) provides bankruptcy courts
authority to use disgorgement where necessary to enforce
§ 726(b).

Santa Fe Medical Group also reasoned that the Bankruptcy
Code "has a comprehensive system for the recovery of assets by
the trustee."  557 F.3d at 230 (quoting In re Headlee Management
Corp., 519 B.R. 452, 459 (Bankr. S.D.N.Y. 2014)).  The
presumption is that Congress intentionally left out disgorgement
as a remedy for violations of § 726(b).  However, the recovery
provisions alluded to by Santa Fe Medical Group are authorities
granted to the trustee to collect the bankruptcy estate.  These
recovery provisions are all necessary to allow the trustee to
collect the whole bankruptcy estate for appropriate distribution
in accordance with § 726(b).  The transfers under question here
are distributed according to court order to professionals during
the bankruptcy case.  The trustee's recovery provisions would be
unnecessary because the orders authorizing interim payments are

16

interlocutory in nature and can always be modified by the
bankruptcy court.  Therefore, there is no need for a separate
recovery provision in the Bankruptcy Code to recover these funds.

*Santa Fe Medical Group* also points out that the Bankruptcy
Code allows professionals to seek and receive interim payments.
There is no provision in the Code that allows for the recovery of
those funds except under § 329(b) (providing for disgorgement of
debtors' attorneys' fees if the court finds such fees exceed the
reasonable value of the services provided) and § 330(a)(5)
(providing for disgorgement should the court later find that the
final award is less than the interim payments already made under
§ 331).  The argument is that implicitly such disgorgement of
payments may not be recovered for any other reason.  Neither
§ 329(b) nor § 330(a)(5) supports this argument.

Section 329(b) makes clear that the court has authority to
order a disgorgement of fees paid to a debtor's attorney, when
there's been overreaching by the attorney, even when the fees
were a retainer paid before the commencement of the case and not
a payment pursuant to an order authorizing an administrative
claim for services rendered after the commencement of the case.
Without such a provision, it would not be clear that the court
would have the authority to order a disgorgement of a prepetition
retainer.  In contrast to the inherent authority of a court to
order a disgorgement of fees in order to achieve a pro rata

17

distribution under § 726(b), § 329(b) covers a situation for which inherent authority to order a disgorgement is not crystal clear.

Section 330(a)(5) was enacted by § 224(b) of the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106 (1994), and merely codify existing inherent authority to order a disgorgement of fees. The courts had recognized before § 330 (a)(5) was enacted that there was inherent authority in the courts to order a disgorgement of fees when the interim payments to a professional exceeded the final amount determined to be reasonable compensation. *See In re Scoggins*, 142 B.R. 940, 943 (Bankr. D. Or. 1992); *In re Bonneville Pac. Corp.*, 147 B.R. 803, 806-07 (Bankr. D. Utah 1992), *aff'd in relevant part sub nom. Anson, Jones & Leta, P.C. v. Segal*, 220 B.R. 434 (D. Utah 1998). As observed in 3 Collier on Bankruptcy ¶ 331.04[1][a] (15th ed. rev., release of December 2000):

> This amendment is an unnecessary codification of the court's ability to reexamine allowances in respect of interim fee awards and to require adjustments of overpayments made during the course of the case.

[Footnote omitted.] Section 330(a)(5) was enacted with other provisions (§§ 330(a)(3) and 330(a)(4)specifying criteria to be applied in assaying the fees to be awarded as reasonable, and the floor statement of Senator Metzenbaum evidenced that these amendments were prompted in part by "examples of how lawyers suck the financial life out of companies by charging exorbitant and

18

unnecessary fees." 140 Cong. Rec. S14597-02 (Oct. 7, 1994)

(statement of Sen. Metzenbaum). Congress, in other words, was

reminding courts that they should not be bound by, and should not

allow, interim payments to dictate their judgment at the end of

the case on the reasonableness of professionals' fees and the

fair value of professionals' services. In enacting § 330(a)(5),

Congress was not addressing the issue of disgorgement where the

estate is insolvent and there is a need for disgorgement in order

to assure that administrative claims be paid pro rata.

Nevertheless, § 330(a)(5) reinforces the policy that the courts

should police distributions on administrative claims in a manner

that assures fairness to the creditors and administrative

claimants of the estate, and should resort to disgorgement when

necessary to achieve such fairness. Section 726(b) embodies such

a concept of fairness by requiring that administrative claimants

in the case of an insolvent estate are paid pro rata. In any

event, § 330(a)(5) does not explicitly prohibit disgorgement of

interim fees to enforce § 726(b), and therefore under *Law*,

disgorgement is still a remedy that courts may use under § 105(a)

to enforce § 726(b).

   *Santa Fe Medical Group* also contends that disgorgement where

the estate is insolvent is contrary to 11 U.S.C. § 549 which

allows the trustee to avoid "*unauthorized* post-petition

transfers." 557 B.R. 229. As already discussed above, the

19

trustee-recovery provisions are designed to collect transfers
made outside of the processes of the bankruptcy case (*i.e.*,
transfers not made by the trustee pursuant to the Bankruptcy Code
or an order of the court).[3]  Hence, the trustee is given power to
recover unauthorized transfers.  The transfers made here are
interim payments that "always subject to the court's
reexamination and adjustment during the course of the case."  *In
re Evangeline Ref. Co.*, 890 F.2d 1312, 1321 (5th Cir. 1989).  For
that reason, there is no need for the trustee to have the power
under § 549 to recover these interim payments.  Therefore,
allowing disgorgement under § 726(b) is not contrary to § 549.

*Santa Fe Medical Group* also contends that disgorgement
unfairly targets professionals.  However, to not allow
disgorgement would treat nonprofessional-administrative claimants
unfairly.  Only professionals have the ability to seek and obtain
interim fees under § 331.  All other administrative claimants
must wait until the end before they are paid on their claims.  It
would be fundamentally inequitable to allow professional-

---

[3]  Section 549 authorizes recovery of transfers authorized
by only 11 U.S.C. § 303(f) or § 542(c), but such transfers are
not made pursuant to interim orders that inherently are subject
to readjustment at the end of a case.  Transfers authorized by
§ 303(f) are transfers occurring in an involuntary case, and do
not require a interim order.  Similarly, § 542(c) addresses the
right to make a transfer when the *transferor* is unaware of the
bankruptcy case, and that right does not require an interim
order.  (It makes sense that § 549 would permit recovery from the
*transferee* of a § 542(c) transfer.)

administrative claimants a windfall because they collected their
fees before other administrative claimants were allowed their
distribution.  Professionals collect interim fees at their own
risk that such disgorgement of fees will be required of them if
the bankruptcy estate is insolvent.  *Kearing*, 170 B.R. at 8–9.
Moreover, allowing professionals to collect and retain their fees
beyond their pro rata distribution when an estate becomes
insolvent would create a superpriority for professional claims
that is not allowed for in the Bankruptcy Code, and thus ignore
the plain language of § 726(b).  *Id.* at 9.  This is a result this
court is unwilling to endorse.

Accordingly, I do not find a reason to overturn *Kearing*, and
I hold that the court has discretion under § 105(a) to disgorge
fees for pro rata distribution under § 726(b).

B.   Whether Disgorgement is Proper in This Case

Now that the court has decided that it may require
disgorgement as a remedy to enforce § 726(b), the court must now
decide whether disgorgement would be proper in this case.  The
Trustee argues that proposed final distribution under the
*Trustee's Final Report* is consistent with the *Order Approving
Compromise* and the *Stipulation* it approved.  He further argues
that the equities do not support disgorgement in this case.  The
court will address each of these contentions below.

1.   The *Joint Motion* and the *Stipulation*

The Trustee argues that his final distribution plan follows the *Order Approving Compromise* (granting the *Joint Motion* and approving the *Stipulation*) and that disgorgement is inappropriate in this case.  "The terms of court orders, plans of reorganization, and stipulations between parties are typically examined under principles of contract interpretation."  *Rifkin v. CapitalSource Finance (In re Felt Manufacturing Co.)*, 402 B.R. 502, 511 (Bankr. D.N.H. 2009).  The court will therefore look at nonbankruptcy law to interpret the terms of the *Joint Motion* and *Stipulation*.  *Id.*  Under D.C. law, the court will determine what a reasonable person in the parties' position would have thought the disputed language meant.  *1010 Potomac Assoc. v. Grocery Mfr. of America, Inc.*, 485 A.2d 199, 205 (D.C. 1984).  "The writing must be interpreted as a whole giving a reasonable, lawful, and effective meaning to all its terms.  *Id.*  "If the document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent."  *Id.*

The Trustee contends that the *Stipulation* only allows The Hartford to claim $125,000 from the § 506(c) surcharge of the secured creditors' collateral, and that any further recovery of The Hartford's claim could only come from unencumbered funds distributed pro rata.  This contention is based on the

22

presumption that § 506(c) surcharges are not collected for the benefit of the estate, but for the benefit of the specific creditors who provided the services and benefits for the secured creditors.  As already discussed in the previous section, this interpretation of § 506(c) is incorrect.  Hence The Hartford would be entitled to its pro rata share from the § 506(c) surcharge in combination with all other unencumbered funds.  Even assuming that the Trustee was correct and The Hartford waived any further *interim* satisfaction of its claim out of the Trustee's § 506(c) recovery, it did not waive its right to a pro rata distribution at the end of the case.  There is nothing in the *Joint Motion* or the *Stipulation* that says The Hartford would not receive its full pro rata disbursal at the end of the case.  In fact, the *Stipulation* states that The Hartford's claim was "subject to pro rata distribution."  Just because The Hartford limited its interim distribution out of the Trustee's § 506(c) recovery does not mean it waived its full administrative claim and its right to a pro rata distribution out of the estate at the end of the case.

The Trustee relies on paragraph 36 of the *Joint Motion* (Dkt. No. 1144) where the Trustee estimates that the unencumbered funds would not exceed $300,000.00, after disbursal of the funds collected under § 506(c).  This argument attempts to bifurcate money collected under § 506(c) and all other unencumbered funds

in the bankruptcy estate.  Again, this is based on an incorrect
interpretation of the purpose and nature of § 506(c).  Section
506(c) does not bifurcate funds or create separate classes of
administrative claims.  Hence, just because the Trustee set forth
a provision that estimates how much of the estate will remain
unencumbered for pro rata distribution does not mean that any
party has waived its right to receive pro rata distribution.  If
one party has received more than its pro rata share of the final
distribution under § 726(b), it should reasonably expect it would
have its funds disgorged to provide pro rata distribution to
other similarly situated claims.

The Trustee also contends that neither the *Joint Motion* nor
the *Stipulation* provide for disgorgement, therefore disgorgement
would be improper.  The Trustee cites *In re Rockway Bedding,
Inc.*, 454 B.R. 592 (Bankr. D.N.J. 2011) for support.  However,
that case is easily distinguishable from this case.  In *Rockway
Bedding*, a plan trustee requested disgorgement of professional
fees to ensure pro rata distribution under a confirmed chapter 11
plan.  454 B.R. at 594.  The court did not provide for
disgorgement because the parties had bargained for a final order
of distribution regarding the fees at issue. 454 B.R. at 597–599.
Here, the parties before the court, the Trustee, his firm, and
The Hartford, were not negotiating for a final order of their
respective administrative claims.  The *Order Approving Compromise*

24

was only an interim order.  All three claimants were subject to
final pro rata distribution.  Further, although the Trustee knew
that the estate was insolvent at the time and did not include a
disgorgement provision in this case, unlike *Rockway Bedding*, the
Trustee here was not negotiating final disbursal of the
administrative claims that are the subject of this case.
Therefore, *Rockway Bedding* does not apply.

Because the *Order Approving Compromise* was not a final
order, all the fees awarded therein were interim and
interlocutory, and, therefore, all were subject to disgorgement.

## 2.  The Equities in this Case

The trustee argues that disgorgement here would be
inequitable.  "Disgorgement is a harsh remedy, one that should be
applied only when mandated by the equities of a case."  *In re
Anolik*, 207 B.R. 34, 39 (Bankr. D. Mass. 1997).  There are four
factors courts have used to determine whether to use disgorgement
including 1) whether the party facing disgorgement reasonably
expected that the payment was final, 2) whether any party harmed
by nondisgorgement objected to the trustee's proposed final
distribution, 3) whether a professional has reason to believe the
goal is unachievable but continues to unreasonably accrue fees,
and 4) whether the hardship against the professional weighs
greater than the value to the estate.  *In re Home Loan Serv.
Corp.*, 533 B.R. 302, 309-310 (Bankr. N.D. Cal. 2015).

25

The first factor weighs in favor of disgorgement here.  The
trustee and his firm did not have a reasonable expectation that
the interim payments were final.  *Kearing* has long been the
precedent in this court, and the *Order Approving Compromise* was
not a final judgment.  Thus, the Trustee could not have
reasonably expected that the payments were final.  It is true
that the last payments were made seven years ago, but as long as
the bankruptcy case continues, there is always the possibility
the court could determine that the fees the Trustee and his firm
were unreasonable under § 330.  Also, because *Kearing* is the
precedent in this court, and the Trustee knew that the estate was
insolvent, he should have known that it was possible, if not
likely, that this court would require disgorgement to enforce
§ 726(b).

The next factor weighs in the Trustee's favor, no party
objected to the Trustee's final distribution plan.  The court *sua
sponte* noticed that the Trustee's final distribution plan did not
comply with § 726(b) and required the parties' briefing on it.
This would seem to imply that the parties acceded to the
Trustee's judgment.

The third factor is inapplicable in this case.  No party has
argued, and no facts were presented, that show that the Trustee
or his firm continued to unreasonably accrue fees against a goal
of maximum distribution of payments to the claimants against the

estate.

The final factor is a balancing between the detriment to the
Trustee and his firm and the benefit to the estate.  The Trustee
contends that there are several reasons that disgorgement in this
case would be inequitable and would cause great harm to him and
his firm.  The Trustee asserts that disgorgement in this case
would bankrupt him and his law firm.  The payments were made more
than seven years ago.  Many of the attorneys that have worked for
the Trustees firm have been paid and left the firm, therefore,
collection from those attorneys would be impossible.

On the other hand, the Trustee and his law firm would enjoy
a significant windfall should disgorgement not be provided.  The
Trustee has already been paid 98.65% of his claim, and his law
firm has already been paid 98.94% of its claim.  Even if the
court modified the final distribution so that the remaining
$340,550.89 went only to the U.S. Trustee and The Hartford, they
would only receive 68.37% of their claims ($341.88 and
$590,209.01 respectively).  The Trustee and his law firm would
receive 30% more of their claim than the U.S. Trustee and the
Hartford.  This also does not take into account Arthur Lander,
the accountant, who currently has received 62% of his claim.  If
the Court requires disgorgement, all parties would enjoy closer
to 91% payment of their claims.

The court finds that disgorgement is appropriate in this

27

case.  Administrative claimants should not be penalized because
they are unable to collect interim payments.  Professionals
should not enjoy a windfall because they can collect interim
payments.  The Bankruptcy Code goes to great lengths to close
windfalls and ensure equitable distribution to creditors within a
priority scheme established by Congress.  If the court did not
require disgorgement in this case, it would be creating a
superpriority for the trustee and his law firm.

IV.  Disgorgement and Disbursement Calculation

Now that the court has concluded that disgorgement is
appropriate, it must determine the amount of disgorgement and the
proper distribution toward administrative claims.  The Trustee
notified the court that besides the Trustee, his law firm, Arthur
Lander, and The Hartford, several other service providers and
professionals were paid from the § 506(c) surcharge against the
secured creditors' collateral.  The Trustee contends that a
disgorgement calculation should take these other administrative
claimants in its calculation.

The entities identified by the Trustee are not parties to
this disgorgement action, and therefore the court will not make a
determination at this time as to whether these parties would be
subject to disgorgement, or are even administrative claims
requiring pro rata distribution.  It is very likely the entities
the Trustee wishes the court to take account of in its

28

calculation received payments of expenses within the ordinary course of business.  This court has made clear that administrative expenses paid in the ordinary course of business under § 363(c)(1) are not subject to pro rata reductions. *Kearing*, 170 B.R. at 7.  Therefore, it is very likely that the expenses paid to these claimants would not be subject to disgorgement and would make no difference toward the disgorgement required of the Trustee and his law firm.

The Trustee is free to pursue a disgorgement claim against the administrative claimants he is seeking the court to consider in its disgorgement calculation.  The court cannot speculate as to the outcome of such a challenge or its effect on any disgorgement and disbursement calculation made today.  On a practical matter, the amount collected by these administrative claimants is relatively small and pursuit of such a request of disgorgement against these claimants may not be prudent. Nevertheless, I leave to the Trustee and his law firm to make that determination.

As for calculation of the disgorgement and fee, I agree with the U.S. Trustee's calculation in *U.S. Trustee's Post-Hearing Response on Disgorgement Calculations* (Dkt. No. 1321). Accordingly, the court will follow the U.S. Trustee's recommendation.

V

Conclusion

For the aforesaid reasons, it is

ORDERED that the chapter 7 trustee, Wendell Webster, is required to disgorge $75,072.11 to the estate for pro rata distribution resulting in a total recovery by the Trustee of $994,180.08.  It is further

ORDERED that the Trustee's law firm, Webster & Fredrickson, PLLC, is required to disgorge $144,231.51 to the estate for pro rata distribution resulting in a total recovery by Webster & Fredrickson, PLLC of $2,409,973.85.  It is further

ORDERED that toward satisfaction of her claim, the U.S. Trustee shall receive $458.60 from the estate as her pro rata share resulting in a total recovery by the U.S. Trustee of $458.60.  It is further

ORDERED that toward satisfaction of its claim, The Hartford shall receive $541,704.31 as its pro rata share resulting in a total recovery by The Hartford of $791,704.31.  It is further

ORDERED that toward satisfaction of his claim, Arthur Lander shall receive $17,691.61 from the estate as his pro rata share resulting in a total recovery by Arthur Lander of $54,743.44.  It is further

ORDERED that the Trustee is free to pursue disgorgement

30

claims against any other administrative claimants he deems appropriate to ensure fair treatment under § 726(b).  It is further

ORDERED that the *Trustee's Final Report* is disapproved to the extent it is inconsistent with the foregoing and is deemed amended to be consistent with the foregoing.  It is further

ORDERED that this is a final appealable order disposing of the court's *Order to Show Cause Why Court Ought Not Require Filing of an Amended Final Report Proposing Distribution of Remaining Funds to Only the U.S. Trustee and Hartford Fire Insurance Company* (Dkt. No. 1292), disposing of the motions for disgorgement made by the U.S. Trustee and The Hartford in their responses (Dkt. Nos. 1294 and 1295) to the *Order to Show Cause*, and disposing of any and all claims raised incident to the litigation of the *Order to Show Cause*.

[Signed and dated above.]

Copies to: Recipients of e-notice of orders.

31